Ronald **ROLAND**, individually and as Chairman of Local Council 1, et al., Plaintiffs-Appellants,

v.

**AIR LINE EMPLOYEES ASSOCIATION, INTERNATIONAL** and Republic Airlines, Inc., Defendants-Appellees.

No. 84–2333.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1984.

Decided Jan. 29, 1985.

It is signed by a LINA manager.

Daniel M. Katz, Connerton, Bernstein & Katz, Washington, D.C., for plaintiffs-appellants.

Russell Woody, Cotton, Watt, Jones & King, Chicago, Ill., for defendants-appellees.

Before ESCHBACH and COFFEY, Circuit Judges, and DUPREE, Senior District Judge.*

COFFEY, Circuit Judge.

The plaintiffs-appellants, Ronald Roland, et al., appeal the denial of their motion for preliminary injunctive relief to dissolve the trusteeships imposed upon eleven Local Councils of the Air Line Employees Association, International ("ALEA"), by Victor Herbert, president of the ALEA. We affirm.[1]

I

The ALEA is the certified bargaining representative for employees of various national and regional airlines, including some 6,200 clerical, office, fleet, and passenger service employees of Republic Airlines.[2] The ALEA is structured into thirty-three Local Councils and each Council is composed of employees from a single airline within a defined geographical area.[3] The members of each Local Council elect a chairman who presides over the local union affairs and who automatically serves on the ALEA's thirty-three member Board of Directors. The Local Council chairmen, in turn, choose a president who serves a five-year term as the ALEA's chief executive officer. The employees of Republic Airlines account for approximately three-quarters of the ALEA's total membership and twenty-one of the ALEA's thirty-three Local Councils consist exclusively of Republic employees. The chairmen of Republic's twenty-one Local Councils form the Republic Master Executive Council and five of those chairmen compose the Negotiating Committee for the Master Executive Council. The named plaintiffs in this lawsuit are eleven members of the twenty-one

---

* The Honorable Franklin T. Dupree, Jr., Senior District Judge of the Eastern District of North Carolina, is sitting by designation.

1. This court agreed to expedite the plaintiffs' appeal due to exigent circumstances and, at the close of oral argument on September 10, 1984, the parties asked that we also render an expedited decision. The following day this panel issued a summary order affirming the district court's denial of the plaintiffs' motion for preliminary injunctive relief. See Roland v. Air Line Employees Ass'n Intern., 745 F.2d 61 (7th Cir.1984). We now set forth, in detail, the legal reasoning for our affirmance.

2. The ALEA is also the certified bargaining representative for selected employees of Aspen Airways, Cascade Airways, Frontier Airlines, and Northwest Airlines.

3. The district court found, and the parties agree for purposes of this appeal, that the Local Councils, as established in the ALEA Constitution and Bylaws, are "subordinate labor organizations" of the ALEA.

member Republic Master Executive Council.

The record reveals that Republic Airlines incurred financial losses at an average rate of $37 million annually during the three year period from January 1, 1980 thru December 31, 1982. Republic lost an additional $115 million during the first three fiscal quarters of 1983. Confronted with this disastrous financial information, the ALEA and Republic Airlines agreed, on August 31, 1983, to amend their existing collective bargaining agreement, reducing employee wages by fifteen percent for the nine-month period from September 1, 1983 thru May 31, 1984. This concessionary amendment was approved by the Master Executive Council and ratified by the affected ALEA membership of Republic employees. Soon thereafter, the Master Executive Council obtained the ALEA's approval to join with four of the five other unions representing Republic employees and organize the Coalition of Unions of Republic Employees ("CURE"). In addition to the Master Executive Council, the member unions of CURE included the Air Line Pilots Association, the Association of Flight Attendants, the American Airways Supervisors Association, and the Transport Workers Union. The only union representing Republic employees that refused to join CURE was the International Association of Machinists. The purpose of CURE was to promote joint discussions between the Republic management and the various union representatives concerning the feasibility of an employee stock ownership plan. The labor organizations realized that further concessions were necessary if Republic employees were to retain their jobs and, according to the CURE leadership, an employee stock ownership plan represented the most advantageous form of concession. Following an exchange of proposals and counterproposals, Republic submitted an offer to CURE in the spring of 1984 calling for the issuance of 5½ million shares of Republic common stock to the Republic employees. CURE rejected the offer.

Despite CURE's rejection, the Air Line Pilots Association, the American Airways Supervisors Association, the Association of Flight Attendants, and the non-CURE member International Association of Machinists, negotiated separate concessionary agreements with Republic between the months of March and June 1984. These agreements assured the union members of continued employment and, at the same time, provided Republic with the capital necessary to continue daily operations. Moreover, each agreement included an employee stock ownership plan that essentially incorporated the terms of the 5½ million share offer that Republic proposed earlier in the spring of 1984. As of June 1984, only the ALEA, representing some 6,200 of Republic's 12,000 employees' and the Transport Workers Union, representing some 70 Republic employees, had failed to approve a further concessionary agreement with Republic. Even though three of the five CURE member labor organizations had negotiated individual agreements with Republic, the Master Executive Council sought to continue joint negotiations with the Transport Workers Union under the banner of CURE. The ALEA president, Victor Herbert, was of the opinion that CURE, now representing only two labor organizations, no longer served a useful purpose. Herbert thus directed that any further negotiations with Republic on behalf of the clerical, office, fleet, and passenger service employees would be conducted by the certified collective bargaining representative of those employees, the ALEA.

On June 22, 1984, the ALEA notified the Master Executive Council that a negotiating meeting had been scheduled in Washington, D.C. for Sunday, July 1, 1984, between the ALEA, the Negotiating Committee of the Master Executive Council, and Republic Airlines. The Master Executive Council responded that "due to flight schedule problems" they would be unable to assemble in Washington, D.C. on the first day of July. The Council proposed, instead, that a joint session be held with the Transport Workers Union the following day, July 2, 1984, in Washington, D.C. The

meeting was not rescheduled and on July 1, 1984, the ALEA entered into an agreement with Republic to extend the period of the fifteen percent employee wage reduction until December 31, 1986, provide Republic with an additional eight percent reduction in labor costs through work rule changes to be agreed upon in future negotiations, and accept Republic's offer of an employee stock ownership plan. The ALEA agreement contained essentially the same terms as the concessionary agreements previously negotiated between Republic and the Air Line Pilots Association, the American Airways Supervisors Association, the Association of Flight Attendants, and the International Association of Machinists. The agreement expressly provided that it was "subject to ratification by members of the Association, which the Association agrees to promptly seek and recommend."

On Friday, July 6, 1984, the ALEA, acting pursuant to Article II(g) of the ALEA Bylaws submitted the agreement to the affected Republic employees for ratification.[4] That same day, a majority of the Republic Master Executive Council agreed to send a letter to the ALEA president, Victor Herbert, claiming that the ratification procedures violated Article II(h) of the ALEA Bylaws as the concessionary agreement had not been approved by the Master Executive Council.[5] A majority of the Master Executive Council also approved the calling of a special meeting of the ALEA Board of Directors, pursuant to Article IX, section 2 of the ALEA Bylaws, to adopt a clarification of the ALEA Bylaws that all contract modifications or amendments be approved by the Master Executive Council and its Negotiating Committee before submission to the affected ALEA membership for ratification.[6] The express purpose of the Board meeting was to retroactively apply the clarification to the July 1 agreement, and thereby invalidate the concessionary bargain reached between the ALEA and Republic Airlines.

The following Monday, July 9, 1984, the Master Executive Council, through its chairman Robert Haskin, sent a letter to president Herbert informing him that "Members of this and other MEC's comprising a majority of the Association's Board of Directors hereby call a special meeting" to be held July 17, 1984, in Memphis, Tennessee. In addition, chairman Haskin informed the ALEA Board members that "a majority [of the Board of Directors] has requested [a special meeting] by letter or telegram as required by [the ALEA] constitution and by-laws." An examination of the record reveals, how-

4. Article II(g) of the ALEA Bylaws provides that:
 "In the course of direct negotiations or in mediation when a settlement is considered acceptable, such shall be submitted to the affected membership for its consideration. Ratification ballots shall be sent to all members who have a current address on file at Headquarters, and only the official ballot received from Headquarters may be used for voting. No photostats or handwritten ballots will be accepted. The affected membership shall be allowed no more than twenty-one (21) days from date of mailing to return their signed ballot by mail. All ballots received on or before expiration of the 21-day period shall be tallied and a majority of those ballots returned shall determine acceptance or rejection of the contract. In the event of rejection of such settlement, the process of negotiation may be continued. In the event arbitration is accepted, the award is final and no further submission to ratification can be made. The decision to arbitrate is determined by the president of the Association in consultation with the affected Master Executive Council

and the Contract Administration Department."

5. Article II(h) of the ALEA Bylaws provides that:
 "All letters of agreement or understanding entered into between regular contract negotiations which change, add to, or amend the signed contract must be ratified by the Master Executive Council of the affected air line. All letters of agreement or understanding must have an effective date and termination date on them before being submitted to the Master Executive Council for ratification. Once ratified, copies shall be sent to all members of the affected air line."

6. Article IX, section 2 of the ALEA Bylaws provides that:
 "The President of the Association or a majority of the members of the Board of Directors may call meetings of the Board of Directors other than at conventions."

ever, that as of July 9, 1984, Haskin had, in fact, received written confirmation from only fifteen of the thirty-three Local Council chairmen. Haskin obtained written approval for the Board of Directors meeting from thirteen chairmen of Local Councils representing Republic employees (including all of the named plaintiffs) and the chairman of one Local Council representing employees of Aspen Airways. In addition, Haskin received a telex confirmation, in favor of the Board of Directors meeting, from one Local Council chairman of Frontier Airlines on July 8, 1984, subsequently revoked by telex two days later. These fifteen confirmations, as of July 9, 1984, clearly did not satisfy the ALEA Bylaw requirement that a majority of the thirty-three member ALEA Board of Directors approve the calling of a special Board meeting. Despite the lack of written approval from a majority of the ALEA Board of Directors, Haskin and the other named plaintiffs insisted that the Board meeting proceed as scheduled on July 17, 1984.

During the week of July 9, 1984, the ALEA initiated negotiations with the Master Executive Council to resolve the intraunion dispute over the July 1 concessionary agreement between the ALEA and Republic Airlines. The parties remained at an impasse and as of Friday, July 13, 1984, the plaintiffs stood firm in their position to proceed with the unauthorized Board of Directors' meeting scheduled for the following Tuesday, July 17, 1984. President Herbert realized, of course, that a majority of the ALEA Board members had not approved the July 1 special meeting, as required by Article IX, section 2 of the ALEA Bylaws. Moreover, president Herbert was aware of the fact that the intended purpose of the unauthorized Board meeting was to invalidate the July 1 agreement that was, at that time, pending before the affected ALEA membership for ratification. In view of the plaintiffs' insistence to proceed with the unauthorized Board meeting, president Herbert believed that an *emergency of sufficient importance* existed to necessitate the exercise of his authority to place certain Local Councils into trusteeship, pursuant to Article I, section 13(a) of the ALEA Bylaws. Thus, on Friday afternoon, July 13, 1984, president Herbert imposed trusteeships upon the eleven Local Councils chaired by the named plaintiffs in this lawsuit. According to Article I, section 13(c) of the ALEA Bylaws, when a Local Council is placed in trusteeship, the functions of the chairman "shall terminate and such functions shall pass to the trustee."

Some five days later, on July 18, 1984, the plaintiffs filed an action under the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.* (1982), in the United States District Court for the Northern District of Illinois, seeking, *inter alia,* a temporary restraining order and preliminary injunctive relief to dissolve the eleven trusteeships and impound the ratification ballots. The plaintiffs further requested that the court prohibit the ALEA from implementing the July 1 agreement until such time as it is ratified by the Master Executive Council. According to the plaintiffs, the ALEA was:

"depriving the plaintiffs and those Republic employees they represent of their right under the ALEA Bylaws to act through the ALEA Board of Directors to enforce the [Master Executive Council] ratification requirement of Article II(h) of the ALEA Bylaws, and of their right to participate fully and fairly in the political process of the membership ratification referendum which the [ALEA] initiated."

On July 19, 1984, the district court denied the plaintiffs' motion for a temporary restraining order and scheduled a status hearing for July 23, 1984, on the plaintiffs' motion for preliminary injunctive relief. Due to time constraints and the expedited nature of this case, the plaintiffs proceeded with their motion for preliminary injunctive relief on the limited issue of "whether a legitimate emergency existed which justified defendant [ALEA] in imposing without a prior hearing the union trusteeships here challenged by the plaintiffs." Following an evidentiary hearing, the district court found that "the Negotiating Committee ab-

sented themselves from the meeting of July 1st without good reason, that they had adequate notice, that they could have attended, and that the reasons advanced by [the plaintiffs] were merely an excuse for not participating." The district court further found that because the July 1 agreement was similar to the individual concessionary agreements entered into between Republic Airlines and the Air Line Pilots Association, the American Airways Supervisors Association, the Association of Flight Attendants, and the International Association of Machinists, "the July 1st agreement was a *bona fide* agreement, negotiated in good faith, and not a 'sweetheart' contract." Additionally, the district court found that "at no time did plaintiff Haskin have written authorizations from a majority of the 33-member ALEA Board of Directors as required, and that, in stating to the contrary then and subsequently, plaintiff Haskin was misrepresenting the facts." In view of this evidence, the district court found that "President Herbert had reasonable grounds to believe, and did believe in good faith, that a legitimate emergency existed on July 13, 1984, justifying the immediate imposition of trusteeship [sic] without a prior hearing." The court determined that:

"President Herbert imposed the trusteeships on [the] Local Councils, because they had supported the special Board of Directors meeting, because Herbert wanted the agreement of July 1, 1984 to be submitted to the membership for approval or disapproval, and to halt plaintiffs' efforts to call a Board of Directors meeting for the improper purpose of securing retroactive amendment of the By laws to require prior ratification of the July 1st agreement by the Master Executive Council, thereby frustrating the July 1 agreement."

Based upon the foregoing findings of fact, the district court concluded that the balance of equities did not clearly favor the plaintiffs. According to the court, Republic Airlines was "in dire financial straits and, in light of that financial condition, a collective bargaining agreement was quite important to Republic, to ALEA and to the 6,500 ALEA members employed by Republic." The district court added that the plaintiffs did not have a reasonable likelihood of success on the merits because:

"[t]he exercise of judgment by Mr. Herbert in imposing the trusteeships was not arbitrary or capricious, and was in accordance with Article I, Section 13 of the [ALEA] By Laws.... [U]nder the circumstances reflected by the record, an emergency existed permitting the imposition of the trusteeships without prior hearing under Article I, Section 13 of the ALEA By Laws...."

Accordingly, the district court denied the plaintiffs' motion for preliminary injunctive relief to dissolve the eleven trusteeships and the plaintiffs filed an expedited appeal in this court.

## II

The plaintiffs contend that the trusteeships imposed upon the eleven Local Councils by ALEA president Herbert on July 13, 1984, violate sections 302 and 304(c) of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 462, 464(c), which provide in pertinent part:

"Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body

\* \* \* \* \* \*

[A] trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing ... shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in

good faith for a purpose allowable under section 462 of this title." [7]

According to Article I, section 13(a) of the ALEA Bylaws:

"Whenever in the judgment of the President of the Association, a local council ... or the members or officers thereof, are acting against the best interests of the Association, or are acting in violation of the Constitution or Bylaws, or are engaging in any activity or course of conduct contrary or detrimental to the welfare or best interests of the Association ... so that in his judgment an emergency is created which requires the taking of immediate action, the President shall have the power to place such council ... in temporary trusteeship by the appointment of a trustee, who shall act under the direction of the President."

The plaintiffs claim that there was no reasonable basis for president Herbert to believe that a sufficient emergency existed on July 13, 1984, to impose the eleven trusteeships and thus his actions were not in accord with the ALEA Bylaws as required by 29 U.S.C. §§ 462, 464(c).[8]

■ The plaintiffs' request for preliminary injunctive relief is authorized by the express language of 29 U.S.C. § 464(a), which provides in pertinent part:

"Any member or subordinate body of a labor organization affected by any violation of this subchapter (except section 461 of this title) may bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate."

(Emphasis added). Indeed, numerous Federal courts have granted preliminary injunctive relief to dissolve trusteeships imposed upon local union councils by the union president. See, e.g., Benda v. Grand Lodge of Intern. Ass'n., 584 F.2d 308, 312–18 (9th Cir.1978), cert. dismissed, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979); National Association of Letter Carriers v. Sombrotto, 449 F.2d 915, 918 (2d Cir.1971); Schonfeld v. Raftery, 381 F.2d 446, 447 (2d Cir.1967); Burch v. International Ass'n of Mach. & Aero Wkrs., 337 F.Supp. 308, 310–15 (S.D.Fla.1971); Local No. 2, Int. Bro. of Tel. W. v. International Bro. of Tel. W., 261 F.Supp. 433, 434–36 (D.Mass.1966); Parker v. International Brotherhood of Teamsters, 229 F.Supp. 172, 177 (W.D.N.C. 1963); Annot., 24 A.L.R.Fed. 386, 438 (1975). We caution, however, that from an analytical standpoint, injunctive relief to dissolve an existing trusteeship is a most unique remedy. In the majority of cases, injunctive relief is sought as an equitable

---

7. The district court ruled that "[s]ection 304(c) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 464(c), requires that, except in cases of emergency, a fair hearing be afforded prior to imposition of a trusteeship." The defendants argue that this is an improper interpretation of 29 U.S.C. § 464(c) because "the better-reasoned cases hold that the statutory requirement of a fair hearing is fully satisfied by a hearing conducted within a reasonable time *after* the imposition of a trusteeship." (Emphasis original). For purposes of this appeal, we need not reach the legal issue of when an intra-union "fair hearing" is required under 29 U.S.C. § 464(c). The sole issue before this court is whether the district court erred in denying the plaintiffs' motion for a preliminary injunction on the basis that a sufficient emergency existed for president Herbert to exercise his authority under Article I, section 13 of the ALEA Bylaws and impose the eleven trusteeships.

8. Title 29 U.S.C. § 462 also requires that trusteeships be established and administered "for the purpose of correcting corruption or financial malpractice, assuring the performance of collec-

tive bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of [the] labor organization." The record reveals that at the preliminary injunction hearing, the plaintiffs only challenged the existence of a sufficient emergency to impose the trusteeships under the ALEA Bylaws. The plaintiffs did not argue, before the district court, that president Herbert's actions were inconsistent with the lawful purposes for imposing a trusteeship, as set forth in 29 U.S.C. § 462. Accordingly, the district court did "not rule on the consistency, or lack of consistency, of defendant's purpose in imposing these trusteeships with the provisions of 29 U.S.C. § 462 prescribing the lawful purposes for which trusteeships maybe [sic] imposed." Similarly, we express no view as to whether or not president Herbert's actions are consistent with the lawful purposes set forth in 29 U.S.C. § 462 for imposition of trusteeships because that issue is not before this court for review.

remedy to preserve the *status quo* pending a final, legal determination on the merits of the case. *See, e.g., O'Connor v. Bd. of Ed. of School Dist. No. 23,* 645 F.2d 578, 582 (7th Cir.), *cert. denied,* 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981); *E.E.O.C. v. City of Janesville,* 630 F.2d 1254, 1259 (7th Cir.1980) ("The purpose of a preliminary injunction is to preserve the object of controversy in its then existing condition, i.e., preserve the *status quo.*"). In the present case, the plaintiffs ask not that the *status quo* be preserved (i.e., maintain the trusteeships), but that the trusteeships imposed by ALEA president Herbert upon the eleven Local Councils be dissolved.[9] As a result of the quasi-legal nature of this remedy, our review of the district court's decision is guided by the equitable principle of fairness as well as a legal analysis of whether the trusteeships were properly imposed in the first instance.

 Within this equitable-legal framework, we must determine whether the district court erred in denying the plaintiffs' motion for preliminary injunctive relief. It is well-settled law in this circuit that in order to obtain preliminary injunctive relief the plaintiffs must establish that:

1) They have no adequate remedy at law or will be irreparably harmed if the injunction does not issue;

2) The threatened injury to the plaintiffs outweighs the threatened harm the injunction may inflict on the defendant;

3) The plaintiffs have a reasonable likelihood of success on the merits; and

4) The granting of a preliminary injunction will not disserve the public interest.

*Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380 at 386 (7th Cir. 1984); *Godinez v. Lane,* 733 F.2d 1250, 1257 (7th Cir.1984); *Technical Pub. Co. v. Lebhar-Friedman, Inc.,* 729 F.2d 1136, 1138–39 (7th Cir.1984); *Alexander v. Chicago Park Dist.,* 709 F.2d 463, 467 (7th Cir.1983); *Syntex Opthalmics, Inc. v.*

*Tsuetaki,* 701 F.2d 677, 681 (7th Cir.1983); *O'Connor v. Bd. of Ed. of School Dist. No. 23,* 645 F.2d at 580; *Fox Valley Harvestore v. A.O. Smith Harvestore Prod.,* 545 F.2d 1096, 1097 (7th Cir.1976). The plaintiffs have the burden of proving each of these factors, *Godinez v. Lane,* 733 F.2d at 1257; *Shaffer v. Globe Protection, Inc.,* 721 F.2d 1121, 1123 (7th Cir.1983); *Dos Santos v. Columbus-Cuneo-Cabrini Med. Center,* 684 F.2d 1346, 1349 (7th Cir.1982); *Fox Valley Harvestore v. A.O. Smith Harvestore Prod.,* 545 F.2d at 1097, and in considering each factor, the "district court must weigh carefully the interests on both sides," *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975). On appeal this court must determine whether the issuance or denial of preliminary injunctive relief "in light of the applicable standard, constituted an abuse of discretion." *Doran v. Salem,* 422 U.S. at 931–32, 95 S.Ct. at 2567–68; *Godinez v. Lane,* 733 F.2d at 1258; *S.E.C. v. Suter,* 732 F.2d 1294, 1301 (7th Cir.1984); *Machlett Laboratories, Inc. v. Techny Industries, Inc.,* 665 F.2d 795, 797 (7th Cir.1981); *O'Connor v. Bd. of Ed. of School Dist. No. 23,* 645 F.2d at 580.

For purposes of this expedited appeal, the parties have focused their arguments upon the equitable balancing of the harms and the reasonable likelihood of success on the merits. We initially address the question of whether the harm to the plaintiffs outweighs the threatened harm that an injunction, dissolving the trusteeships, would place upon the defendants. The obvious injury to the eleven named plaintiffs is that following imposition of the trusteeships on July 13, 1984, they no longer preside as chairmen over their respective Local Councils nor serve on the ALEA Board of Directors. Thus, during the pendency of the trusteeships the plaintiffs are barred from actively performing their duties as chairmen of Local Councils and members of the ALEA Board of Directors. The plaintiffs

9. Though the general purpose of a preliminary injunction is to preserve the *status quo* pending a final, legal determination on the merits, there are times when the preliminary injunction must mandate rather than prohibit action in order to prevent irreparable injury to the plaintiff. *See* J. Moore, J. Lucas & K. Sinclair, Moore's Federal Practice ¶ 65.04[1], at 65–37 (1984).

further complain that because president Herbert imposed trusteeships upon a majority of the Local Councils included within the Master Executive Council (eleven of twenty-one), "Herbert has insured that there is no democratically constituted body within ALEA to which the members can turn to check his power." According to the plaintiffs, they are prevented from performing their elected functions and, as a result, the views of the ALEA's rank and file membership are not adequately represented before the international union.

Balanced against this injury to the plaintiffs is the internal strife and dissension likely to occur within the ALEA, as well as the hardships likely to be inflicted upon Republic Airlines, if the trusteeships are dissolved. The record reveals that on July 27, 1984, the affected ALEA membership, by a vote of 2,455 (for) to 2,139 (against), approved and ratified the July 1 agreement between the ALEA and Republic.[10] Despite this approval by the very ALEA membership that the plaintiffs were elected to represent, the plaintiffs demand that the July 1 agreement "not be adopted and implemented until it has been ratified *by a majority of the members of the Republic [Master Executive Council]....*" (Emphasis added). Clearly, if we were to dissolve the trusteeships, the plaintiffs would continue their efforts to adopt a retroactive clarification of the ALEA Bylaws requiring ratification of the July 1 agreement by a majority of the Master Executive Council. The plaintiffs avowed objective is to invalidate an agreement that has been ratified by a majority of the affected ALEA membership and implemented by the ALEA and Republic Airlines. The plaintiffs' actions run contrary to their delegation of authority and responsibility, as Local Council chairmen, to fairly and adequately represent the views of the ALEA membership. Regardless of whether or not the plaintiffs

would succeed in their Bylaw clarification efforts, the dissolution of the trusteeships would create intra-union dissension and wreak havoc among the various airline employees. The Republic employees, along with all other airline employees within the ALEA, would be uncertain as to the status of their concessionary agreements. The ALEA membership would be justifiably angered and confused by the unauthorized attempt of elected chairmen to invalidate an agreement already ratified by a majority of the affected union members. The internal squabbles within the ALEA would weaken the very fibre of the union, and thus hamper the union's efforts to negotiate with Republic and the other airlines on behalf of its dues-paying members. Moreover, Republic Airlines would be forced to negotiate with a hostile and divided union in its struggle to continue daily operations while attempting to recoup the disastrous financial losses of the preceding four years. Republic's dire economic straits, when combined with an antagonistic labor-management relationship, would, in all probability, result in the loss of jobs for ALEA members and the insolvency of Republic Airlines.

We also note the district court's finding that the Negotiating Committee of Republic's Master Executive Council, with advance notice and full knowledge of the July 1 meeting, "voluntarily and without good reason absented themselves" from that meeting. Indeed, the record reveals that the Negotiating Committee, representing the interests of all eleven named plaintiffs, made a voluntary and conscious choice *not* to participate in the July 1 negotiation that produced the concessionary agreement now at issue. It circumvents the equitable principle of fairness to allow the plaintiffs to attempt to invalidate the results of a duly-called, July 1 meeting that they had every

---

**10.** The plaintiffs contest the final vote tally, claiming that the ratification was actually defeated if one considers only the votes of those affected ALEA members in "good standing." An examination of the record reveals, however, that the plaintiffs presented no evidence to the district court, nor this court, in support of their conclusory, self-serving statement that certain ALEA members' ratification ballots should be disqualified. Thus, for purposes of this appeal we consider the July 1 agreement as properly ratified by a majority of the affected rank and file members of the ALEA.

opportunity to attend, either personally or through elected representation, in the first instance. The plaintiffs' assertion that they were "unable to attend" the July 1 negotiation session in Washington, D.C. is without merit, especially in light of the Negotiating Committee's offer to reschedule the meeting for the following day, July 2, 1984, in the same city, Washington, D.C.

The plaintiffs complain that president Herbert acted in bad faith because he imposed trusteeships upon a majority (eleven) of Republic's twenty-one Local Councils and thereby "undermin[ed] ALEA's democratic political process." The record clearly reveals, however, that the chairman of each of the eleven Local Councils placed in trusteeship was in favor of proceeding with the unauthorized Board of Directors meeting for the expressed intent of invalidating the ALEA's July 1 concessionary agreement with Republic. Article I, section 13(a) of the ALEA Bylaws authorizes president Herbert to impose a trusteeship upon any Local Council that he believes is "engaging in any activity or course of conduct contrary or detrimental to the welfare or best interests of the Association," so as to create an emergency. Thus, as long as president Herbert reasonably believed that an emergency of sufficient importance existed, he was entitled to impose trusteeships upon all eleven Local Councils. In view of the evidence presented at the preliminary injunction hearing, the equities in this case do not favor the plaintiffs. Based upon the district court's findings of fact, the record before this court, and the plaintiffs' avowed efforts to invalidate the July 1 agreement as ratified by a majority of the ALEA members, we hold that the plaintiffs' harm, caused in large measure by their refusal to attend the July 1 meeting and bargain with the Republic management, does not outweigh the potential harm

to the ALEA if the trusteeships are dissolved.

We next consider the plaintiffs' reasonable likelihood of success on the merits. At the preliminary injunction hearing, the plaintiffs argued that president Herbert's actions violate the requirement of sections 302 and 304(c) of the LMRDA, 29 U.S.C. §§ 462, 464(c), that a trusteeship be established and administered in accord with the union bylaws. Article I, section 13(a) of the ALEA Bylaws provides that the ALEA president has the authority to impose a trusteeship when, in his judgment, an emergency of sufficient importance is created that requires immediate action. The plaintiffs contend that it was not reasonable for president Herbert to believe that an emergency existed on July 13, 1984, and thus the imposition of the eleven trusteeships violates sections 302 and 304(c) of the LMRDA. Our review is limited to a determination of whether the plaintiffs are likely to prove, at a trial on the merits, that it was not reasonable for ALEA president Herbert to believe, in light of the evidence before him, that an emergency of sufficient importance was created requiring the imposition of eleven trusteeships.[11]

Following an evidentiary hearing on the plaintiffs' motion for preliminary injunctive relief, the district court found that:

> "The exercise of judgment by Mr. Herbert in imposing the trusteeships was not arbitrary or capricious and was in accordance with Article I, section 13 of the By Laws. The Court further finds that, under the circumstances reflected by the record, an emergency existed permitting the imposition of the trusteeships...."

The court concluded that "in imposing the trusteeships, President Herbert had reasonable grounds to believe, and did believe

---

**11.** The plaintiffs, at a trial on the merits, could conceivably argue that president Herbert's actions also violate the requirement of 29 U.S.C. § 462 that a trusteeship be imposed "for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or duties of a bargaining representative, restoring democratic

procedures, or otherwise carrying out the legitimate objects of [the] labor organization." We note, however, that the plaintiffs failed to present any evidence on this issue at the preliminary injunction hearing before the district court. Accordingly, we express no view as to the plaintiffs' reasonable likelihood of success on the merits of this claim. *See supra,* note 8.

in good faith, that a legitimate emergency existed on July 13, 1984, justifying the imposition of trusteeship [sic] without a prior hearing." A review of the record reveals that there is substantial evidence to support the district court judge's finding of a sufficient emergency to warrant the imposition of eleven trusteeships.

According to the evidence presented at the preliminary injunction hearing, Republic Airlines incurred financial losses at an average rate of $37 million annually during the three year period from January 1, 1980 thru December 31, 1982. Republic lost an additional $115 million during the first three fiscal quarters of 1983 ànd posted a modest $4 million profit in the fourth quarter of that year. Thus, Republic's aggregate losses for the four year period ending December 31, 1983, were in excess of $220 million. These catastrophic losses were the very reason that the ALEA and its affected members agreed to "pull back the reins," exercise sound fiscal judgment, and accept a fifteen percent employee wage reduction for the nine month period from August 31, 1983 thru May 31, 1984. Similarly, these enormous financial losses provided a basis for the district court's finding that Republic Airlines was in "dire financial straits." [12]

As of June 1984, four of the six unions representing Republic employees, including the Air Line Pilots Association, the Association of Flight Attendants, the American Airways Supervisors Association, and the International Association of Machinists, negotiated additional concessionary agreements with Republic, in order to assure their members of continued employment and to allow the airline to continue daily operations. According to the terms of these individual labor contracts, the unions agreed to continue the fifteen percent employee wage reduction and also participate in Republic's employee stock ownership plan. On July 1, 1984, the ALEA entered into a similar concessionary agreement with Republic, calling for an extension of the fifteen percent wage reduction until December 31, 1986, assurance of an eight percent reduction in labor costs to be agreed upon in future negotiations, and participation in Republic's stock ownership program. On July 6, 1983, president Herbert, acting in accord with Article II(h) of the ALEA Bylaws, submitted the agreement to the affected ALEA membership for ratification. While the agreement was before the membership for approval, the plaintiffs attempted to call a special meeting of the Board of Directors in order to adopt a retroactive clarification of the ALEA Bylaws requiring that the July 1 agreement be ratified by the Master Executive Council. The plaintiffs' express intent in seeking this Bylaw clarification was to invalidate the July 1 agreement.

President Herbert was of the opinion that the concessionary agreement negotiated between Republic Airlines and the ALEA, as the certified bargaining representative for some 6,200 Republic employees, was in \the best interest of those employees. Moreover, Herbert was aware of the fact that a majority of the Board of Directors had not approved the special Board meeting scheduled for Tuesday, July 17, 1984. Despite efforts by the ALEA to resolve the intra-union dispute, by Friday afternoon, July 13, 1984, president Herbert "had received no assurance that the plaintiffs would not attempt to proceed with the Board of Directors meeting scheduled for

12. The defendants contend that Republic was not in dire financial straits on July 13, 1984, because the airline, while losing $4 million in the first quarter of 1984, turned a $29 million profit in the second quarter of 1984. The plaintiffs introduced no evidence at the preliminary injunction hearing to show that on July 13, 1984, the day president Herbert placed the eleven Local Councils in trusteeship, he had any knowledge of Republic's 1984 second quarter earnings statement. Instead, the record reveals that Republic's 1984 second quarter earnings statement was not released to the public until July 26, 1984, some two weeks after the trusteeships were imposed by president Herbert. The record further reveals that a substantial portion of the second quarter earnings were directly attributable to the concessionary agreements entered into between Republic and the Air Line Pilots Association, the Association of Flight Attendants, the American Airways Supervisors Association, and the International Association of Machinists, between the months of March and June 1984.

Tuesday, July 17." The plaintiffs efforts to invalidate the July 1 agreement, while it was before the affected ALEA members for ratification, would have created chaos and confusion within the union. The ALEA general membership would have had no guarantee that the concessionary agreement, even if ratified, would be implemented by the ALEA and legitimate doubts would have arisen concerning individual job security and the effectiveness of the ALEA leadership. Moreover, the plaintiffs' insistence to proceed with the unauthorized board meeting was a calculated violation of the ALEA Bylaws that threatened to unsettle the delicate balance of negotiation that existed between the ALEA and Republic Airlines. In view of this evidence, it was more than reasonable for ALEA president Herbert to believe that an emergency of substantial importance existed on July 13, 1984, requiring the imposition of eleven trusteeships.

The plaintiffs argue that no real emergency existed because if the board meeting was improperly called, as president Herbert claims, then any action taken by the Board would have been invalid. This argument overlooks the fact that Herbert has a duty to abide by, as well as enforce, all of the ALEA Bylaws, including the requirement that a special board meeting be called only at the request of a *majority* of the Board members. Indeed, president Herbert, if he is to effectively direct and guide the activities of the ALEA, cannot permit a group of disgruntled Local Council chairmen to circumvent the ALEA Bylaws for their personal gain, in contravention of the best interests of the union as a whole. Regardless of whether or not the plaintiffs would have been successful in their efforts to invalidate the July 1 agreement, the unauthorized board meeting would have weakened the coherence and stability of the ALEA, representing some 6,200 Republic employees. The overall effect would have been to place the ALEA at a distinct disadvantage in future negotiations, including the then scheduled discussions of work rule changes needed to achieve the eight percent reduction in labor costs agreed upon in the July 1 agreement.

The plaintiffs further claim that no emergency existed because Republic would have enforced the fifteen percent wage reduction, regardless of the July 1 agreement. This argument is likewise without merit. The July 1 agreement not only extended the fifteen percent wage reduction until December 31, 1986, it also provided for an eight percent reduction in labor costs and adoption of an employee stock ownership plan. This concessionary agreement was a comprehensive, package bargain, assuring the Republic employees of continued job security and allowing Republic to continue daily operations while recouping a portion of its disastrous financial losses from the preceding four-year period. The reduction in labor costs and the employee stock ownership plan were, and remain, vital elements of this agreement that could not have been implemented absent the July 1 agreement between the ALEA and Republic. Based upon our review of the record and the evidence presented at the preliminary injunction hearing, we hold that the plaintiffs have no real likelihood of succeeding on the merits of their claim that president Herbert's actions violate the requirement of 29 U.S.C. §§ 462, 464(c) that trusteeships be established and administered in accord with the union's bylaws. Accordingly, we hold that the district court judge did not abuse his discretion in denying the plaintiffs' motion for preliminary injunctive relief to dissolve the eleven trusteeships imposed by ALEA president Herbert.

### III

We affirm the judgment of the district court.