**AMERICAN CIVIL LIBERTIES UNION OF ILLINOIS, Kathryn Giuntoli, and Joan Markley, Plaintiffs,**

v.

**CITY OF ST. CHARLES and Fred T.L. Norris, Defendants.**

No. 85 C 09917.

United States District Court,
N.D. Illinois, E.D.

Dec. 5, 1985.

*First Bank National Association,* 613 F.Supp. 968 n. 1 (E.D.N.Y.1985).

Lowell E. Sachnoff, Jane M. Whicher, Fay Clayton, Jeffrey E. Stone, Sachnoff Weaver & Rubenstein, Ltd., Chicago, Ill., for plaintiffs.

Jack M. Siegel, William R. Warnock, Siegel & Warnock, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

This case presents the difficult and sensitive issue of whether the Establishment Clause of the First Amendment prohibits the City of St. Charles, Illinois from including an illuminated latin cross in its annual Christmas lighting display. The lighting display has been a part of St. Charles' Christmas celebration for more than fifteen years.

The plaintiffs, two St. Charles' residents and the American Civil Liberties Union of Illinois, filed this suit challenging the City's annual practice of displaying the illuminated cross. Plaintiffs seek declaratory and injunctive relief prohibiting St. Charles from displaying the illuminated cross on City property.[1] The defendants, the City

1. The Seventh Circuit has established the criteria that must be met by plaintiffs seeking preliminary injunctive relief. Plaintiffs must establish that they have no adequate remedy at law or will be irreparably harmed if the injunction does not issue; the threatened injury to the plaintiffs outweighs the threatened harm the injunction may inflict on the defendant; the plaintiffs have a reasonable likelihood of success on the merits; and the granting of a preliminary injunction will not disserve the public interest. *Roland v. Air Line Employees Ass'n, International,* 753 F.2d 1385, 1392 (7th Cir. 1985). Plaintiffs have satisfied that burden here. *See generally Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

of St. Charles and its Mayor, Fred T.L. Norris, sued in his official capacity, deny that the lighted cross violates the United States Constitution.

This matter was first presented to the Court on November 27, 1985 by motion of the plaintiffs for a temporary restraining order and preliminary injunction. On the same day, the defendants, through their counsel, sought additional time to respond to the motion and voluntarily agreed not to display the illuminated cross until the hearing could be held and the Court had the opportunity to rule on the question. The hearing was held on December 2, 1985.

## I. *The Setting and the Structure* [2]

St. Charles is located along the Fox River in Kane County, Illinois and has a population of approximately 18,300 people. According to the testimony of its Mayor, Fred T.L. Norris, the City, in an attempt to brighten Christmas spirits and cheer for the residents and tourists of St. Charles, has for more than 15 years sponsored a spectacular Christmas holiday lighting program. As part of this annual lighting program, the City decorates the main thoroughfares of St. Charles as well as the city buildings with lights and ornamentation.

On both Main Street (Route 64) and Illinois Street the City erects six foot lighted Christmas trees that are attached to the top of the street lamps that run parallel to the roadways. The street lamps and the attached Christmas trees are on the public way. St. Charles is situated in the valley of the Fox River and the Christmas trees along Main Street stretch from one side of the valley to the other. The Illinois Street trees are hung in the downtown area and across the Illinois Street Bridge which spans the Fox River.

An integral part of St. Charles' lighting program is the decorations that adorn the municipal complex. The municipal complex is a six acre plot of land located in the heart of downtown St. Charles. The public

buildings located in the municipal complex are the municipal center, the planning and public works building, the fire station, the public safety building and an electrical facility. All the trees in the six acre municipal complex are illuminated with strings of white lights during the holiday season.

At the southwest end of the complex sits the municipal center, a large white marble building that serves as the city hall and local museum. The two story municipal center has a large tower that extends upward for three or four stories. The tower is octagonal in shape and is topped off with a glass pyramid type structure. As part of the lighting program the sides of the tower are illuminated alternatively in green and red lights. The glass top is lighted in blue. The lighting creates a stunning display that can be seen for miles and reflects beautifully off the Fox River which is immediately to the west of the municipal complex. The street-level windows of the municipal center are also decorated and contain animated scenes associated with the holiday season. Finally, mounted along the south wall of the municipal building is a large lighted wreath with a red bow.

To the northeast of the municipal center is the planning and public works building (otherwise known as the city plant and Swanson building). The south wall of this two story structure overlooks a municipal parking lot and is visible from the streets that intersect in front of the municipal complex. This wall is decorated with lighted snowflakes, a lighted snowman and a lighted Santa Claus.

Directly to the north of the planning and public works building and approximately 80 feet from the municipal center is the City's fire station. The fire station's east wall is decorated with a lighted wreath and two coach lamps which are illuminated by green and red bulbs. Multicolor lights are also strung along the east and extend around to the south face of the fire station. On the

2. To assist the Court the plaintiffs introduced four black and white photographs of the fire station and tower. (PX 1–4). The defendants introduced twenty-nine photographs of the St. Charles downtown and surrounding area as it appears when decorated as described below. (DX 1–29). The defendants also introduced an architect's drawing of the municipal complex area indicating the location of the various buildings. (DX 30).

west side of the fire station, facing the Fox River, illuminated snowflakes are attached to the building. A large green illuminated wreath is mounted on the west face of the fire station's hose drying tower.

To the northwest of the fire station is the public safety building. This structure is also decorated with multicolored lights along its roof line. On the west side of the building and on the shore of the Fox River, a large twenty foot simulated Christmas tree is created with strings of green lights and is topped with a white lighted star.

There is one other decoration that appears in the municipal complex area. It is the reason for this litigation. At issue here is the string of lights attached to a communications tower on the roof of the fire station's hose drying building. The communications tower is a 35-foot, three-legged, triangular metal structure anchored in concrete on the roof of the two story hose drying tower of the St. Charles fire station. The metal communications tower is used as a television antenna and has an aenometer mounted on it for the purpose of measuring wind speed and direction. The tower also anchors a radio scanning antenna used by the St. Charles police and fire department for mobile communication. Attached to the metal tower, slightly above its midpoint, is a crossbar which runs perpendicular to the tower and parallel to the ground. This crossbar was originally installed in 1965 and was later reinforced in 1969. It served as a ground plane radio antenna from its installation until the mid 1970's. The crossbar no longer serves any function other than as additional bracing for the metal tower. The cross bar as reinforced is about eighteen feet in width and consists of two "U" shaped pieces of ¾" conduit which have their open ends attached to the tower.

On or about the 1969 Christmas holiday season, the volunteer firemen decided to incorporate the communications tower and the crossbar into the City's annual lighting program. At that time, the volunteer firemen installed white lights on the tower and crossbar, configuring the lights in such a way as to create the appearance of a latin cross.

For nearly 15 years the City's annual lighting program went unchallenged. Last year, after the propriety of the City spending public funds to light the cross was questioned by some citizens of St. Charles, a separate meter was installed to monitor the electrical costs associated with the illuminated cross. A private citizen donated the money to pay the $23.65 in electrical costs resulting from the cross being illuminated during the holiday season from Thanksgiving 1984 to January 2, 1985. There are no other expenses associated with the cross because volunteer firemen maintain the lights on their own time and at their own expense.

This year, 1985, plaintiffs challenge through this lawsuit the constitutionality of the illuminated cross formation being displayed on City property, despite the private maintenance and funding of the cross. The plaintiffs object to no other aspect of the St. Charles holiday lighting display other than the illuminated cross on the fire station's communications tower.

## II. *Discussion*

The legal issue presented by this case requires the Court to draw what the United States Supreme Court has called the "blurred, indistinct, and variable barrier" between that which is allowed and that which is prohibited by the Establishment Clause of the First Amendment to the United States Constitution. *Lemon v. Kurtzman*, 403 U.S. 602, 614, 91 S.Ct. 2105, 2112, 29 L.Ed.2d 745 (1971). In accordance with the Supreme Court's approach in *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), this Court looks to the *Lemon* three-prong test for guidance on this sensitive and delicate line-drawing task.

The *Lemon* analysis poses three inquiries: (1) does the challenged governmental conduct have a secular purpose; (2) is the principal or primary effect of the challenged governmental conduct to advance or inhibit religion; and (3) does the challenged governmental conduct foster an excessive entanglement of government with religion. *Lemon*, 403 U.S. at 612–13, 91 S.Ct. at

2111. A negative answer to the first question or a positive answer to either the second or third questions requires the determination that the challenged governmental conduct does not pass constitutional muster.

The Court believes that the conduct challenged here, even when considered as only one part of a municipal Christmas holiday lighting display, fails to pass constitutional muster.

### A. *Secular Purpose.*

In order to withstand Establishment-Clause scrutiny, governmental conduct must be motivated at least in part by secular concerns. Chief Justice Burger, writing for the majority in *Lynch,* noted that governmental activity has been struck down as unconstitutional under this prong of the *Lemon* test only when the activity "was motivated wholly by religious considerations." *Lynch, supra,* 104 S.Ct. at 1362. In *Lynch* the majority of the Supreme Court decided that the governmental purposes underlying the display of a creche depicting the birth of Jesus Christ—celebration of the public holiday of Christmas and depiction of the historical origins of the public holiday—were sufficiently secular to satisfy the first *Lemon* requirement. As Justice O'Connor explained in her concurring opinion:

> The evident purpose of including the creche in the larger display was not promotion of the religious content of the creche but celebration of the public holiday through its traditional symbols. Celebration of public holidays, which have cultural significance even if they also have religious aspects, is a legitimate secular purpose.

*Lynch, supra,* 104 S.Ct. at 1368.

The "purpose" inquiry is complicated in this case by the fact that the challenged symbol in St. Charles' holiday display is a latin cross, which is "distinctively religious" and "universally regarded as a symbol of Christianity." *Lynch, supra,* 104 S.Ct. at 1370 (Brennan, J., dissenting); *American Civil Liberties Union v. Rabun County Chamber of Commerce,* 698 F.2d

1098, 1110 (11th Cir.1983). The City of St. Charles certainly intended the illuminated cross to be a part of its celebration of the Christmas holiday: the lighted cross was only one element of the City's much larger and award winning annual Christmas display of lights. If *Lynch* stands for the proposition that a celebratory purpose, no matter how religiously thematic the symbols displayed may be, suffices to pass the first *Lemon* test, then St. Charles' actions would not be constitutionally infirm under that test.

This Court hesitates, however, to read *Lynch* so broadly. As an initial matter, Justice Brennan in dissent specifically noted that the majority's opinion implicitly left open questions concerning the constitutionality of the display on public property of "distinctively religious symbols such as a cross." *Lynch, supra,* 104 S.Ct. at 1370 (Brennan, J., dissenting). Justice O'Connor's concurrence, moreover, stressed the traditional, as opposed to religious, nature of the creche at issue in *Lynch.* Because of the creche's traditional association with the Christmas holiday, Justice O'Connor was able to conclude that Pawtucket's "evident purpose" in including the creche in its annual Christmas display was celebration, and specifically not "promotion of the religious content" of the symbol.

Such a conclusion is not as easily reached here. Unlike the creche, a cross on a building, even during the Christmas season, does not ordinarily conjure up in a viewer's mind the historical antecedents of the Christmas holiday. Indeed, many Christian church buildings display the latin cross to indicate that the building is in fact a church. For this reason, among others, a cross on a building has come to have religious meaning in our society separate from any religious holiday.

Fred T.L. Norris, Mayor of the City of St. Charles, testified that he considers a cross to be one of the traditional symbols of the Christmas holiday season. Even assuming that Mayor Norris' perception is shared by the general populace, the Court would find it difficult to take the next step,

taken by Justice O'Connor, and conclude that the "evident purpose" in St. Charles' inclusion of a cross in its Christmas display was not to promote its religious message.

The Court believes, however, that it need not resolve this initial difficult question since the City's conduct fails to comply with *Lemon*'s second requirement—that the primary "effect" of governmental conduct be religion-neutral.

### B. *Principal or Primary Effect.*

The second prong of the *Lemon* analysis, as articulated by Justice O'Connor, considers whether "a government practice [has] the effect of communicating a message of government endorsement or disapproval of religion." *Lynch, supra,* 104 S.Ct. at 1368. Governmental endorsement, the Justice explained,

> sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community.

*Id.* at 1366. Whether or not governmental activity conveys such an endorsement is "a legal question to be answered on the basis of judicial interpretation of social facts." *Lynch,* 104 S.Ct. at 1369 (O'Connor, J., concurring). .

■ The Court is convinced that the primary effect of including an illuminated cross in the City's annual Christmas display was to place the government's imprimatur on the particular religious beliefs associated with the latin cross. "Those who believe in the message" of the cross "receive the unique and exclusive benefit of public recognition and approval of their views." *Lynch,* 104 S.Ct. at 1373 (Brennan, J., dissenting).

The Court also believes that, unlike a creche displayed in the midst of, among other things, a Santa Claus house, clown, elephant and teddy bear, the apparent governmental endorsement of Christianity is not "negate[d]" by the overall holiday display of lights in St. Charles. *Lynch, supra,* 104 S.Ct. at 1369 (O'Connor, J., concurring). Unlike a creche, a cross is not commonly found displayed in the midst of purely secular symbols of the Christmas holiday. And unlike a creche which is traditionally displayed only at Christmas time, a cross is displayed year-round on buildings associated with the Christian religion (*e.g.,* churches and parochial schools) for the purpose of conveying the message that the building is associated with the Christian religion.

In short, the City of St. Charles cannot be allowed to illuminate the cross-shaped tower on top of a municipal building because such an action has the effect of conveying an association with or tacit approval of Christianity at the expense of any other religion, agnosticism or atheism. The approval and benefit conveyed by the thirty-five by eighteen foot illuminated cross beaming over the rooftops of St. Charles is more than "indirect, remote [or] incidental...." *Lynch, supra,* 104 S.Ct. at 1364.[3] A preliminary injunction must issue.[4]

### C. *Excessive Entanglement.*

Having found a constitutional violation, the Court will not engage in a lengthy discussion of the third prong of *Lemon,* the excessive-entanglement test. The Court will note, however, that plaintiffs' argument that the record-keeping done by the

---

**3.** As was held in *Fox v. City of Los Angeles,* 22 Cal.3d 792, 587 P.2d 663, 150 Cal.Rptr. 867 (1978), which prohibited the defendant city from illuminating a large cross on its city hall to celebrate Christmas and Easter, such conduct by a governmental body unconstitutionally identifies the body with the Christian religion.

**4.** At the hearing on this matter, counsel agreed that plaintiffs' motion would be limited to one seeking a temporary restraining order. The

Court believes, however, that plaintiffs' motion is best construed as one for a preliminary injunction since notice was provided to the defendants and an evidentiary hearing on the matter was held. In light of the short time period of the Christmas season, moreover, the Court believes that defendants should be afforded the right to an immediate appeal of this decision if they choose to do so, a remedy available under 28 U.S.C. § 1292(a)(1) if plaintiffs' pleading is taken as a motion for preliminary injunction.

City of St. Charles to ensure that private funds were used to maintain the lighting hardly seems to constitute the "ongoing, day-to-day interaction between church and state" prohibited by the Constitution. *Lynch, supra,* 104 S.Ct. at 1364. Whatever involvement St. Charles might have had with the display of the cross, it fell far short of Pawtucket's purchase, erection and illumination of the creche approved of in *Lynch. See also McCreary v. Stone,* 739 F.2d 716, 725 (2d Cir.1984), *aff'd by an equally divided Court,* — U.S. —, 105 S.Ct. 1859, 85 L.Ed.2d 63 (1985).

### III. *Conclusion*

The first guaranty of the Bill of Rights to the United States Constitution is freedom from any "law respecting an establishment of religion, or prohibiting the free exercise thereof...." It is a foundation of our country that religion be an individual and voluntary exercise. When a governmental body adorns a public building with a religious symbol so universally identified as a symbol of one religion as is the illuminated cross on the St. Charles fire station, it exceeds the boundaries of neutral accommodation of religion. The Establishment Clause prohibits such conduct.

As well meaning as the city fathers of St. Charles may be in their holiday lighting display, the illuminated cross on the fire station tower has the effect of unconstitutionally embracing Christianity beyond the allowable limits of the First Amendment.

IT IS THEREFORE ORDERED for the reasons stated herein that the City of St. Charles is enjoined from illuminating the configuration of lights forming the shape of a cross on the communications tower attached to the roof of the St. Charles fire station pending a final adjudication of this action. Due to the extraordinary circumstances of this case, including the public-interest nature of plaintiffs' position, the Court in its discretion deems that the proper security to be posted by plaintiffs is the nominal amount of $1.00 to effectuate this order.