**INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO, LOCAL LODGE 714; Michael Bellmore, President; Ronald Gilmore, Vice President; Susan Garvin, Secretary-Treasurer; Sandra Aker, Recording Secretary; Brunetta Wiegand, Chairman of Trustees; Karen Steege, Trustee; Frances Logan, Trustee; and Paul Schultz, Inspector, Defendants.**

No. 87 C 1708.

United States District Court,
N.D. Illinois, E.D.

July 8, 1987.

Bernard M. Mamet, Bernard M. Mamet & Associates, Ltd., Chicago, Ill., for plaintiff.

Richard J. Tupper, Cornfield and Feldman, Chicago, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

This order concerns the motion of plaintiff International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO ("International"), for a preliminary injunction to enforce a trusteeship and the motion of defendant Local Lodge 714 of International ("Local 714") for a preliminary injunction to dissolve trusteeship. Originally, this matter was referred to Magistrate Elaine E. Bucklo to conduct a hearing and prepare recommended findings of fact and conclusions of law. On May 15, 1987, Magistrate Bucklo submitted her report to this court recommending that International's motion for preliminary relief be granted and that Local 714's motion be denied. Pursuant to Fed.R.Civ.P. 72(a), this court reviewed the magistrate's proposed findings and conclusions *de novo* and now enters the following order adopting the recommendation of Magistrate Bucklo with the following clarifications.

## I. FINDINGS OF FACT

This court adopts the magistrate's findings of fact with certain exceptions as set forth below.

International is a labor organization with approximately 120,000 members. The members are members of local lodges such as Local 714. Local 714, at least until November 13, 1986, was composed of from 135–141 (the answer states the number as 141 although testimony at the hearing indicated fewer members) persons who were production and maintenance employees of Quaker Industries, Inc. in Antioch, Illinois.[1]

In August 1986, International held an election for president and other officers of the organization. Various persons were unhappy with the results of that election (and apparently other votes taken at the International convention) and decided to try to form a competitive labor organization. Beginning in the fall of 1986, various locals

---

1. This court assumes the testimony at the hearing corrects the error in Local 714's original written answer establishing the accurate number of members as 135. The court notes, however, that this number is unimportant in that it addresses the propriety of forfeiture and does not address the issue of whether the trusteeship was imposed according to the guidelines set forth in International's constitution. The latter issue alone is before this court and this court finds that even in the absence of ten members, International's constitution provides for the reversion of the local's funds, books, and assets to International. *See* Article 5, § 6 of International's constitution attached as Exhibit A to plaintiff's verified complaint for injunctive relief.

attempted to disaffiliate from International. International responded with the imposition of trusteeships upon at least some of those locals that attempted to disaffiliate.

International's constitution, Article XVIII, provides that the Executive Council of the International may place any local under trusteeship "if it is satisfied after notice and hearing that a trusteeship is warranted and the interests of the International Brotherhood so require." Grounds for a trusteeship are stated to be:

> secession or threatened secession, dissolution or threatened dissolution, dissipation or loss of funds or assets or financial malpractice or corruption or threat thereof; violation or threatened violation of collective bargaining agreements; the deprivation of democratic procedures and other activities constituting a violation of this Constitution and threatening the welfare of the subordinate body membership or the International Brotherhood.

Section XVIII of International's constitution also provides that a trustee duly appointed by International's president after notice and hearing, has the right, upon demand, to the "funds, properties, books and assets" of the local. The trustee must be bonded and must use any local funds "only to the extent necessary for the proper conduct of the subordinate body." In addition, expenses of the trusteeship are to be paid from the funds of the trusteed local. The trusteeship "shall be continued no longer than is necessary to coordinate and reorganize the affairs of the subordinate body."

Article XXXV of International's constitution states that the funds of local lodges "are trust funds for the benefits of its members" which, upon surrender or revocation of the local's charter, are to be forfeited to International. Various Local 714 members testified that they would never have voted to affiliate with International in 1972 if they had known of the provision in International's constitution permitting forfeiture of funds on dissolution. The provi-

sion apparently has been part of the constitution at least since that time. Local 714 has also approved bylaws at various times that state that Local 714 agrees to abide by and incorporates the International's constitution as its bylaws.

Local 714 was chartered as a subordinate lodge by International in 1972. In late October 1986, Michael Bellmore, the President of Local 714, met with Thomas Cooper, one of the organizers of the newly formed competitive international (the Independent Workers of North America) and until August 1986, an International Vice President for the Great Lakes Area of International. As a result of this meeting, Bellmore called an executive board meeting of Local 714 on November 10, 1986. The board voted to distribute a petition to disaffiliate from International. A separate dues revocation sheet was also distributed. A vote was scheduled for November 13, 1986.

On November 11, 1986, pursuant to a vote of the Board (apparently ratified by the membership on November 13) Local 714 transferred its bank account to a new account under the name Independent Workers of North America. This money has been kept separate from other money collected by the new union. Some of it, however, has been used to pay expenses of Local 15.

The petition to disaffiliate from International was distributed by Local 714's shop stewards. 130 of the 135–141 members of Local 714 signed the petition. At the election held on November 13, 1986, the vote to disaffiliate was 102 to 2.[2] International was not told of the meeting. Bellmore testified that he was afraid International would have taken steps to prevent the meeting if it had learned of it. He also testified that the trustee appointed by International and other International agents have attempted to disrupt meetings of the new union since this time.

Pursuant to the November 13, 1986 vote, officers and most of the members of Local 714 formed what they now call Local 15 of

---

**2.** The vote to disaffiliate was 112 to 2. Again, the accuracy of the number is unimportant to this court's ruling.

the new international, Independent Workers of North America. Local 15 has the same officers as Local 714. Bellmore did not know if Local 15 had new books and records or simply continued those of Local 714.

On November 14, 1986, Local 15 petitioned the NLRB for an election of bargaining representative on the ground that a "schism" existed at the local level (thus attempting to avoid the contract bar doctrine). Local 15 filed a second petition for an election with the NLRB on January 5, 1987, when because of the imminent expiration of the existing collective bargaining agreement with Quaker Industries on March 27, 1987, the contract bar doctrine would not prevent a new election. That election has not yet been held.

International learned of Local 714's disaffiliation vote and on December 3, 1986, International wrote a letter, the receipt of which is acknowledged by the individual defendants, entitled "Official Hearing Notice." The notice was of a hearing to consider the imposition of a trusteeship. On December 5, 1986, International also sent a letter to the individual defendants directing them to attend the hearing and to bring with them Local 714's books and records.

The trusteeship hearing was held on December 19, 1986. None of the individual defendants attended the hearing. On January 30, 1987, International voted to impose a trusteeship. Various grounds are stated in International's decision, including the fact that Local 714's officers or members had promoted disaffiliation, that the actions of Local 714's officers violated their duties to International, and that since Local 714 had not produced its records it was "reasonable to infer that possible financial malpractice" has occurred.

International states that it does not really care if the members of Local 714 want to disaffiliate. It does, however, seek the books and records of Local 714, as well as the funds (about $8,000) that were in Local/714's bank account prior to November 11, 1986.

In its counterclaim, Local 714 asked for preliminary and permanent injunctive relief to restore to Local 15 of the Independent Workers of North America dues paid by members since November 13, 1986, which Quaker Industries has paid to International, as well as an injunction against the imposition of the trusteeship. At the hearing, Local 714 agreed that these funds were not properly the subject of a preliminary injunction.

The certified bargaining representative to Quaker Industries is listed in International's complaint and other documents as Local 714. The collective bargaining agreement states that it is between Quaker Industries and International as well as Local 714. That agreement has now expired, however, and International did not attempt to impose the trusteeship on the basis of interference with a collective bargaining agreement.

## II. DISCUSSION

### A. Burden of Proof

On the cross motions for preliminary injunctions before this court, the burden of proof for each party differs substantially. The Seventh Circuit specifically notes in *Roland v. Air Line Employers Ass'n*, the distinction between a party seeking to preserve the status quo through a preliminary injunction (*i.e.*, enforcing a trusteeship) and a party seeking to destroy the status quo (*i.e.*, dissolving a trusteeship). 753 F.2d 1385, 1392 (7th Cir.1985). Cautioning that "injunctive relief to dissolve an existing trusteeship is a most unique remedy," the court sets forth the traditional four-part test which a movant seeking a preliminary injunction to dissolve a trusteeship must meet: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if the injunction does not issue or lack of an adequate remedy at law; (3) the threatened injury to plaintiff outweighs the threatened harm to defendants; and (4) the granting of an injunction will not disserve the public interest." *Id.* at 1391–92.

When seeking to preserve the status quo by enforcing a trusteeship through a request for preliminary relief, the traditional four-factor test is modified by sections 302

and 304(c) of the Labor-Management Reporting and Disclosure Act of 1959. 29 U.S.C. §§ 462, 464(c). Section 462 states that an international organization may impose a trusteeship on a local affiliate:

only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.

29 U.S.C. § 462.

Section 464(c) creates a presumption of validity for a trusteeship providing in relevant part:

In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board ... shall be presumed valid for a period of eighteen months ... and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under Section 462 ...

29 U.S.C. § 464(c).

■ The presumption of validity in § 464(c) significantly diminishes the burden of proof placed on the party seeking to enforce a trusteeship through a motion for preliminary relief. *National Ass'n of Letter Carriers v. Sombrotto,* 449 F.2d 915, 920 (2d Cir.1971). In *Sombrotto,* the court notes that the burden of a party seeking preliminary relief is considerably lessened in the case of a parent union seeking to enforce a trusteeship against one of its locals. *Id.* Analyzing § 464(c), the *Sombrotto* court explains that, "Congress contemplated that if a parent's constitution had an appropriate provision and this was complied with, the courts were to enter the picture to invalidate a trusteeship only if

the local ... chose to contest the parent's decision and was able to overcome a rather stiff presumption of validity." *Id.* at 921. Thus, the upshot of *Sombrotto* is that the parent organization need not affirmatively show a likelihood of success on the merits because § 464(c) presumes the imposition of a trusteeship valid unless the local is able to show by clear and convincing evidence it was imposed unlawfully.

Addressing whether International is entitled to preliminary relief, this court will first discuss whether Local 714 has rebutted the § 464(c) presumption that the trusteeship imposed by International is valid under International's constitution and under § 462. Next, the court will determine whether International has established the remaining requirements for preliminary relief: (1) lack of an adequate remedy at law, (2) threatened harm to International outweighs potential harm to Local 714, and (3) granting the injunction will not disserve the public interest. Finally, the court will address the merits of Local's motion for preliminary relief.

### B. *Compliance With International's Constitution*

The *Roland* decision reiterates the *Sombrotto* court's conclusion that the local bears the burden of showing with clear and convincing evidence that the parent union either failed to conform to its constitutional procedures when establishing the trusteeship or failed to establish the trusteeship for a purpose allowable under § 462. *Roland v. Air Line Employees Ass'n,* 753 F.2d 1385, 1390–91 (7th Cir.1985). This court adopts the magistrate's finding that International complied with the procedure for establishing a trusteeship as set forth by International's constitution. The only objection raised by Local 714 is that it was no longer a subordinate body at the time International established the trusteeship. Local 714 claims that a disaffiliation vote taken prior to the imposition of the trusteeship ended Local 714's status as a subordinate body and therefore made the imposition of a trusteeship on Local 714 a violation of International's constitution. Local 714, however, proffers no precedent or au-

thority to show that it was not to be considered a subordinate body when International imposed the trusteeship.

■ Notwithstanding the vote of disaffiliation prior to the imposition of the trusteeship, this court finds no authority to support Local 714's position. On the contrary, case law points to enforcement of the trusteeship despite a vote of disaffiliation taken prior to the establishment of the trusteeship. *See Graphic Arts Int'l Union, AFL–CIO v. Graphic Arts Int'l Union Local No. 529,* 529 F.Supp. 587 (W.D.Mo.1982) (local's disaffiliation vote indicating 90% of membership supporting disaffiliation which was taken prior to parent's imposition of a trusteeship did not prevent court from enforcing trusteeship). Furthermore, Local 714's secession vote does not alter International's ability to comply with the procedures set forth in their constitution. Article XVIII of International's constitution states that grounds for a trusteeship include secession or threatened secession. In the absence of any authority supporting Local 714's position, much less clear and convincing proof that it was not a subordinate body at the time the trusteeship began, this court finds that International has a reasonable likelihood of success in establishing that it acted in accord with the terms of its constitution.

### C. *Compliance With § 462 Purposes*

The only question remaining is whether Local 714 can put forth clear and convincing proof that International did not establish or maintain the trusteeship for a purpose allowable under 29 U.S.C. § 462. One valid purpose under § 462 will suffice for International to establish the trusteeship. *C.A.P.E. Local Union 1983, IBPAT, AFL–CIO v. Int'l Brotherhood of Painters and Allied Trades,* 598 F.Supp. 1056, 1075 (D.N.J.1984).

■ The purposes allowable, as noted previously, include a local's financial malpractice. While this court agrees with the magistrate's conclusion that mere union self-preservation is not an allowable purpose under § 462, the court concludes that International has a reasonable likelihood of

success in its assertion that the trusteeship was established because of Local 714's financial malpractice.

■ International supports its position by claiming that the absence of Local 714's officers at the hearing and their failure to turn over the records, funds, assets and monies at the time of the hearing allows International to infer financial malpractice has occurred. Beyond this, the facts indicate, and Local 714 admits, that Local 714 used monies to finance the activities of a competing union. This is a clear violation of International's constitution. If International cannot support the inference of financial malpractice or confirm the transfer of funds out of Local 714's account to a competing union, it is because the former members of Local 714 hold the evidence in their possession. Even if the former members of Local 714 in good faith believe these funds belong to them and have distributed these funds according to the preferences of the membership, International is not barred from asserting in good faith that this expenditure of funds constitutes financial malpractice. *Graphic Arts Int'l Union, AFL–CIO v. Graphic Arts Int'l Union, Local No. 529,* 529 F.Supp. 587, 594.

This court repeats that it is not International's burden to prove that financial malpractice is the purpose under § 462 which validates the imposition of the trusteeship. Rather, the court notes that Local 714 carries the burden of showing with clear and convincing evidence that International did not have a good faith belief that Local 714's financial dealings warranted the imposition of the trusteeship. Local 714 fails to meet this burden. Local 714 continues to possess the books, records, assets, and funds and Local 714 admits in its verified answer that it sought to send Local 714's monies to a competing union. Local 714 fails to present clear and convincing proof that could lead this court to believe that International did not impose the trusteeship with a good faith belief that financial malpractice had occurred.

### D. The Remaining Requirements for Injunctive Relief

In addition to finding that International has a reasonable likelihood of success on the merits, this court adopts the magistrate's findings that the International met the remaining three requirements of the four-part test established in *Roland*. Concluding that International had met parts 2, 3, and 4 of the *Roland* test, the magistrate states:

> Under Congress' presumption, a trusteeship does not disserve the public interest unless imposed without proper procedures or for an improper purpose.

A preliminary injunction is intended to preserve the status quo. In this case, if International's motion is not granted enforcing the trusteeship, there may be no books, records, funds or members left by the time the case goes to trial. Accordingly, International does not have an adequate remedy at law.

For the same reasons the harm to International if an injunction is not entered outweighs the potential harm to Local 714 if an injunction is entered. There has been no showing that Local 714 has any need for the books and records of the old local and if it should prevail at trial, International's treasury should be sufficient to restore the approximately $8,000 in Local 714's account. Local 714 also indicated that it feared International would use the funds to try to prevent Local 714 from winning the bargaining election. It seems unlikely, however, that International needs these funds for electioneering (assuming that it can use them for that purpose). Local 714's last concern is that the trustee, if the trusteeship is permitted to go on, will continue to interfere in Local 15's meetings. There is nothing in the trusteeship, however, that would give the trustee the right to interfere in Local 15's meetings. If he does, Local 15 has various remedies, including those it has taken in the past and filing an unfair labor practice charge before the NLRB, to stop such actions.

In light of the foregoing findings, International has met the requirements for preliminary relief. As such, International's motion for a preliminary injunction enforcing the terms of the trusteeship is granted.

### E. Local 714's Motion is Denied

Local 714's failure to rebut the presumption of validity granted to International's establishment of the trusteeship precludes it from establishing a reasonable likelihood of success on the merits. This failure, coupled with the magistrate's findings that International has satisfied the remaining requirements of the *Roland* test, requires this court to deny Local 714's motion for injunctive relief.

### III. CONCLUSION

For the foregoing reasons, this court affirms the magistrate's recommendation to grant plaintiff International's motion for a preliminary injunction to enforce the trusteeship and to deny defendant Local 714's motion for a preliminary injunction to dissolve the trusteeship.

IT IS SO ORDERED.