INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO; Robert Simmons, as International Trustee of Local Lodge D129 of the Cement, Lime, Gypsum and Allied Workers Division of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO, Plaintiffs–Appellees,

v.

LOCAL LODGE D129 OF the CEMENT, LIME, GYPSUM AND ALLIED WORKERS DIVISION OF THE INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO; Gerard M. Sapunarich, Individually, and as President of Local Lodge D129; Vincent A. Notabartolo, Individually, and as Recording Secretary of Local Lodge D129; and Floyd Falk, Individually, and as Secretary/Treasurer of Local Lodge D129, Defendants–Appellants.

No. 1269, Docket 90–7079.

United States Court of Appeals, Second Circuit.

Argued May 21, 1990.

Decided Aug. 9, 1990.

---

Bernard N. Katz, Philadelphia, Pa. (Robert G. Rothstein, Meranze and Katz, Philadelphia, Pa., Paul M. Collins, Hinman, Straub, Pigors and Manning, Albany, N.Y., of counsel), for defendants-appellants.

Michael J. Stapp, Kansas City, Kan. (Blake & Uhlig, Kansas City, Kan., Bruce Bramley, Pozefsky, Bramley & Murphy, Albany, N.Y., of counsel), for plaintiffs-appellees.

Before VAN GRAAFEILAND, MESKILL and WALKER, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from an order of the United States District Court for the Northern District of New York, Cholakis, J., granting plaintiffs-appellees' motion for a preliminary injunction enforcing trusteeship on Local Lodge D129 pursuant to section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). The question presented on appeal is whether the trusteeship was established in accordance with Section 302 of the Landrum–Griffin Act, 29 U.S.C. § 462, which mandates that trusteeships be imposed only on "subordinate bod[ies]" of the parent labor union.

We reverse and remand.

## BACKGROUND

Following approximately two years of negotiations, the Cement, Lime, Gypsum and Allied Workers International Union (CWI) merged with plaintiff-appellee International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO ("IBB" or "International") on April 1, 1984. Pursuant to the terms of the merger agreement, the IBB Constitution, as amended, was adopted as the governing instrument of the merged organization, and the Local Lodges, previously affiliated with the CWI, became affiliates of the IBB. Defendant-appellant Local Lodge D129, which, at the time of the merger, was composed of workers employed at the Lehigh Portland Cement Company in Alsen, New York, was one of the CWI affiliates affected. The merger agreement also provided that joint officers were to be selected at the biannual convention of the IBB in August 1986 and, specifically, that the CWI was entitled to elect one International vice president.

However, as a result of widespread dissatisfaction with the 1986 election procedures, the officers and members of Local Lodge D129 held a meeting on or about May 1, 1987 and resolved, by vote of 60–0, to disaffiliate from the IBB and to affiliate with a rival international union, the Inde-

pendent Workers of North America (IWNA).[1] A "Resolution and Petition," which explicitly provided for "total disaffiliation ... from the [IBB]" and declared the IWNA as the new collective bargaining representative, was promptly circulated to the entire membership of the Local Lodge and, by May 4, 1987, was signed by 117 members of the 121 member local. Formal National Labor Relations Board (NLRB) certification of the IWNA as the employees' bargaining agent has, at all relevant times, been blocked by a pending unfair labor practice charge against the employer, the Lehigh Portland Cement Company, filed by the IBB shortly after the merger; however, the 117 signators have voluntarily paid dues to the newly formed IWNA Local 129 from May 1, 1987.

Several months later, on August 25, 1987, IBB President Charles W. Jones imposed an "Emergency Trusteeship" on Local Lodge D129 pursuant to Article XVIII, Section 3, of the IBB Constitution. The reasons given for imposing the trusteeship were: (1) certain officers and/or members were improperly promoting dual unionism; (2) certain officers and/or members were improperly promoting disaffiliation, secession and dissolution of the local; (3) certain officers were failing to perform their duties and responsibilities; (4) there was possible financial malpractice concerning Local Lodge funds and assets; (5) the Local Lodge had failed to make proper reports and pay per capita tax to the IBB; and (6) a fundamental conflict of interest existed due to certain officers' and/or members' ties with the IWNA. Jones appointed International Representative Robert Simmons as trustee, and suspended from office Local Lodge President defendant-appellant Gerard M. Sapunarich, Local

Lodge Recording Secretary defendant-appellant Vincent A. Notabartolo and Local Lodge Financial Secretary/Treasurer defendant-appellant Floyd H. Falk. The suspended officers were directed to "immediately surrender all funds, properties, books and assets of [the] Local ... pursuant to Article XVIII, Section 2 of the International Constitution."

On June 3, 1988, plaintiffs moved for and were granted a preliminary injunction to enforce the trusteeship under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). In commenting on the Local Lodge's attempt to disaffiliate from the International by internal membership vote, the district judge stated: "The Court is not aware of any authority, either statutory, casewise or any authority contained in the contract between the parent and the local, which would allow a disassociation or a disaffiliation proceeding conducted in this manner." The court concluded that the attempted disaffiliation was ineffective, and, consequently, enjoined defendants Sapunarich, Notabartolo and Falk from, *inter alia*, refusing to turn over monies and assets in the control of the Local Lodge to the International Trustee, and from dissipating, expending or transferring monies from the account of the IBB Local Lodge D129.

The defendants thereafter turned over to the trustee all books and records of Local Lodge D129 and a cashier's check in the amount of $15,898.04, representing the total assets of the Lodge at the time of the disaffiliation vote. The defendants refused, however, to turn over any funds "voluntarily" contributed by the membership subsequent to the May 1987 disaffiliation vote (approximately $60,000) or

**1.** Numerous other CWI locals nationwide have similarly attempted to dissociate from the IBB and affiliate with the IWNA in the wake of the allegedly "undemocratic" August 1986 elections. *See, e.g., International Brotherhood of Boilermakers v. Local Lodge D405*, 699 F.Supp. 749 (D.Ariz.1988); *International Brotherhood of Boilermakers v. Local Lodge D31*, 694 F.Supp. 1203 (D.Md.1988); *International Brotherhood of Boilermakers v. Local Lodge D238*, 678 F.Supp. 1575 (M.D.Ga.1988), *aff'd*, 865 F.2d 1228 (11th Cir.1989); *International Brotherhood of Boiler-*

*makers v. Local Lodge 1244*, 128 L.R.R.M. (BNA) 2648, 1988 WL 114590 (N.D.Ind.1988); *International Brotherhood of Boilermakers v. Local Lodge D474*, 673 F.Supp. 199 (W.D.Tex. 1987); *International Brotherhood of Boilermakers v. Local Lodge 714*, 663 F.Supp. 1071 (N.D. Ill.1987), *vacated and remanded*, 845 F.2d 687 (7th Cir.1988); *International Brotherhood of Boilermakers v. Local Lodge D461*, 663 F.Supp. 1031 (M.D.Ga.), *aff'd mem.*, 835 F.2d 1439 (11th Cir.1987).

any post-disaffiliation documentary records.

Consequently, on September 1, 1989, defendants Sapunarich, Notabartolo and Falk were held in civil contempt for failure to comply with the court's June 3, 1989 preliminary injunction order. The defendants purged themselves of contempt by depositing the post-disaffiliation funds with the Clerk of the Court pending clarification or modification of the preliminary injunction order. However, in the clarification order dated December 5, 1989, the district judge adhered to his earlier ruling and ordered that all monies held in escrow be turned over to the IBB trustee. This appeal followed. Defendants' motion for a stay pending appeal and waiver of supersedeas bond was denied on January 23, 1990.

## DISCUSSION

Appellants argue, as they did in the district court, that in early May 1987, virtually the entire membership of Local Lodge D129 voted to disaffiliate and resign from the IBB. The bargaining unit contemporaneously formed Local Union 129, an independent, separate and segregable local labor organization affiliated with the IWNA. According to the appellants, as the Local Lodge then had fewer than ten members, it was automatically disbanded pursuant to Article V, Section 6, of the IBB Constitution and therefore no trusteeship could validly be imposed. We agree and, consequently, reverse the grant of preliminary injunctive relief enforcing the trusteeship.

### A. *Standard of Review*

■ A district court's grant of preliminary injunctive relief enforcing trusteeship is reversible only on a showing of abuse of judicial discretion. *See Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931–32, 95 S.Ct. 2561, 2567–68, 45 L.Ed.2d 648 (1975); *AMR Servs. Corp. v. International Brotherhood of Teamsters,* 821 F.2d 162, 163 (2d Cir.1987) (per curiam); *Coca–Cola Co. v. Tropicana Prods., Inc.,* 690 F.2d 312, 315 (2d Cir.1982). Such an abuse may consist of either a misapplication of apposite legal standards or a misplaced reliance on clearly erroneous findings of fact. *See AMR Servs. Corp.,* 821 F.2d at 163; *see also Reuters Limited v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990); *Tropicana Prods., Inc.,* 690 F.2d at 315–16. *See generally* 7 J. Moore, J. Lucas & K. Sinclair, *Moore's Federal Practice* ¶ 65.04[2] (2d ed. 1989 & Supp.1989–90).

### B. *Analysis*

■ Section 302 of the Landrum–Griffin Act (formerly, the Labor–Management Reporting and Disclosure Act of 1959) limits the authority of parent unions to impose trusteeships on their local affiliates. It provides:

> Trusteeships shall be established and administered by a labor organization over a *subordinate body* only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.

29 U.S.C. § 462 (emphasis added). The plain language of section 302 therefore "envisions a parent union imposing a trusteeship only on a 'subordinate body' of that parent and only in conformity with the parent's constitution or bylaws." *Tile, Marble, Terrazzo, Finishers, Shopworkers & Granite Cutters Int'l Union v. Tile, Marble, Terrazzo, Helpers & Finishers Local 32,* 896 F.2d 1404, 1410–11 (3d Cir.1990) (*TMT Local 32*); *accord International Brotherhood of Boilermakers v. Local Lodge 714,* 845 F.2d 687, 691–92 (7th Cir. 1988). *See generally* Bellace, *Union Trusteeships: Difficulties in Applying Sections 302 and 304(c) of the Landrum–Griffin Act,* 25 Am.U.L.Rev. 337 (1976). Concordant with the language of section 302, Article XVIII, Section 1 of the IBB Constitution provides, in pertinent part:

> The Executive Council shall have the authority to place any *subordinate body*

under trusteeship if it is satisfied after notice and hearing that a trusteeship is warranted and the interests of the International Brotherhood so require.... Grounds for the imposition of trusteeships shall include: secession or threatened secession; dissolution or threatened dissolution; dissipation or loss of funds or assets or financial malpractice or corruption or threat thereof; violation or threatened violation of collective bargaining agreements; the deprivation of democratic procedures and other activities constituting a violation of this Constitution and threatening the welfare of the subordinate body membership or the International Brotherhood.

(emphasis added). Thus, assuming the legitimacy of the International's asserted grounds for the imposition of trusteeship, the pivotal question on appeal is whether Local Lodge D129 existed as a "subordinate body" of the IBB on August 25, 1987, when the trusteeship was imposed. For the reasons that follow, we conclude that it did not.

Article V, Section 6 of the International Constitution, entitled "Minimum Requirements for Maintaining Local Lodge Charters," provides, in pertinent part:

Any Local Lodge having less than ten (10) active members shall be automatically disbanded and its Charter returned to the International Brotherhood, together with all books, records, properties, funds and assets ... owned or held by such Local Lodge at the time of such disbanding, which shall become the property of the International Brotherhood.

Notwithstanding the absence of formal NLRB decertification, "it is axiomatic that a local union that has been dissolved or disbanded [pursuant to Article V] can no longer be considered a 'subordinate body' of the International." *TMT Local 32*, 896 F.2d at 1411; *accord Local Lodge 714*, 845 F.2d at 692 (Posner, *J.*) ("[T]he [IBB] constitution seems to make the international's right to impose a trusteeship on a local depend on the local's retaining at least ten members. For if it dips below that number, the local disappears—there is nothing to impose a trusteeship on—and its assets

revert to the international. The local is no longer a subordinate body of the international; it is no sort of body; it is nothing."); *International Brotherhood of Boilermakers v. Local Lodge D238*, 865 F.2d 1228, 1235 (11th Cir.1989); *Flight Eng'rs Int'l Ass'n v. Continental Air Lines, Inc.*, 297 F.2d 397, 402–03 (9th Cir.1961), *cert. denied*, 369 U.S. 871, 82 S.Ct. 1141, 8 L.Ed.2d 276 (1962). Consequently, if Local Lodge D129 had fewer than ten members when International President Charles Jones exercised his "[e]mergency [p]ower" under Article XVIII, Section 3, to impose trusteeship upon it, the trusteeship cannot stand; the local affiliate simply ceased to exist under the IBB Constitution. We therefore turn our attention to the legal effect of Local Lodge D129's May 1987 "disaffiliation" petition.

We begin by noting that Section 7 of the National Labor Relations Act (NLRA), 29 U.S.C. § 157, which grants employees the right to "refrain from any or all [concerted] ... activities," has long guaranteed a union employee's right to resign from union membership at any time. *See Pattern Makers' League of North America v. NLRB*, 473 U.S. 95, 106, 105 S.Ct. 3064, 3071, 87 L.Ed.2d 68 (1985); *Booster Lodge No. 405, Int'l Ass'n of Machinists & Aerospace Workers v. NLRB*, 412 U.S. 84, 87–88, 93 S.Ct. 1961, 1963–64, 36 L.Ed.2d 764 (1973) (per curiam); *NLRB v. Granite Slate Joint Board, Textile Workers Union of America*, 409 U.S. 213, 216, 93 S.Ct. 385, 387, 34 L.Ed.2d 422 (1972); *TMT Local 32*, 896 F.2d at 1412; *NLRB v. Martin A. Gleason, Inc.*, 534 F.2d 466, 476 (2d Cir. 1976). Although a union constitution and bylaws may impose reasonable restrictions on this right, *see, e.g., Martin A. Gleason, Inc.*, 534 F.2d at 476, we agree with the Third Circuit in *TMT Local 32* that, as long as specific procedures for resignation are absent from those instruments, "resignation may be accomplished in any manner sufficient to show a voluntary decision to part with union membership." 896 F.2d at 1413 (signatures on "Notice of Resignation," authorization for dues checkoff to incipient local of the Bricklayers and Allied

Crafts International (BAC) and authorization for representation by BAC Local 32 held sufficient); *see also NLRB v. Mechanical and Allied Prod. Workers Union, Local 444*, 427 F.2d 883, 884–85 (1st Cir.1970) (orally informing International President of intention to resign and destroying union membership card in President's presence held sufficient); *International Brotherhood of Boilermakers v. Local Lodge 714*, 696 F.Supp. 391, 392–93 (N.D.Ill.1988) (signatures on petition to disaffiliate and to revoke dues withholdings found sufficient), *on remand from*, 845 F.2d 687; *Graphic Arts Int'l Union v. Graphic Arts Int'l Union, Local 529*, 529 F.Supp. 587, 590–92 (W.D.Mo.1982) (disaffiliation vote taken by ballot found sufficient); *Bradley v. Local 119, Int'l Union of Elec., Radio and Machine Workers*, 236 F.Supp. 724, 729 (E.D. Pa.1964) (revocation of payroll dues withholdings in conjunction with submission of signed writing expressing a desire to withdraw or resign found sufficient). The IBB Constitution does not set out resignation procedures that would control what happened in this case. Although Article XXXIV, Section 1 prescribes a specific withdrawal procedure for the purpose of "going into business or entering another occupation not coming under established work jurisdiction of any division of the International Brotherhood," the Constitution is devoid of any general provision for voluntary resignation or disaffiliation. *See Local Lodge 714*, 696 F.Supp. at 393.

Appellees contend that Article XVIII, Section 1 expressly proscribes disaffiliation. We are unpersuaded. We agree with Judge Posner, who, in interpreting the same constitutional provision, noted that

"[t]he [I]nternational's [C]onstitution is ambiguous on the right to disaffiliate." *Local Lodge 714*, 845 F.2d at 692. *Cf. International Brotherhood of Boilermakers v. Local Lodge D474*, 673 F.Supp. 199, 204 (W.D.Tex.1987) ("International *cannot* ... attempt to prevent disaffiliation by [Local] D474 members") (emphasis added). Article XVIII, Section 1, simply makes "secession or threatened secession" or "dissolution or threatened dissolution" grounds for imposing a trusteeship; it neither authorizes nor explicitly prohibits disaffiliation. Although this language might be interpreted as an implied prohibition on disaffiliation, we must harmonize the language with the explicit mandate of Article V, Section 6, which states that "[a]ny Local Lodge having less than ten (10) active members shall be automatically disbanded and its Charter returned to the International Brotherhood." We must also give effect to Section 7 of the NLRA, 29 U.S.C. § 157, which, as discussed previously, guarantees union employees the right to resign from union membership. Thus, even construing the trusteeship provision as an implicit proscription against disaffiliation, we agree with the Seventh Circuit that "[t]here is no necessary inconsistency"—any trusteeship must simply be imposed *prior* to the dissolution of the local pursuant to Article V, Section 6.[2] *Id.* (International's right to impose trusteeship dependent on local's retaining at least ten members). While we recognize that such an interpretation may undermine the efficacy of the trusteeship provision to a degree, it does not render it a nullity; a trusteeship may clearly be imposed subsequent to a disaffiliation/resignation vote that fails to reduce the local's

---

**2.** In this regard, we note that Article XXIX, Section 2(a) of the IBB Constitution, which provides that "[n]o member in exercising [membership] rights shall conduct himself improperly, evade or avoid his responsibility to the Organization as an institution, or engage in or advocate any conduct that would interfere in the Organization's performance of its legal or contractual obligations or functions," does not dictate a contrary conclusion. A union employee who resigns from International membership is *not* exercising a "membership" right as defined in Section 2(a)—*e.g.*, the right to "be seated and to participate in the Local Lodge meetings, vote

in elections, [or] express ... views, arguments or opinions upon [union] business"—but, rather, in exercising his or her statutory right to resign pursuant to Section 7 of the NLRA, 29 U.S.C. § 157. Such activity clearly falls outside the scope of Section 2(a). *But cf. International Brotherhood of Boilermakers v. Local Lodge D504*, 866 F.2d 641, 644 n. 8 (3d Cir.) (interpreting Section 2(a) to prohibit disaffiliation, although pre-dating *TMT Local 32*, 896 F.2d 1404 (1990)), *cert. denied sub nom. Marositz v. International Brotherhood of Boilermakers*, —— U.S. ——, 110 S.Ct. 59, 107 L.Ed.2d 27 (1989).

membership below the threshold set forth in the disbandment provision. *See, e.g., International Brotherhood of Boilermakers v. Local Lodge D405*, 699 F.Supp. 749 (D.Ariz.1988); *International Brotherhood of Boilermakers v. Local Lodge D31*, 694 F.Supp. 1203 (D.Md.1988); *International Brotherhood of Boilermakers v. Local Lodge D238*, 678 F.Supp. 1575 (M.D.Ga. 1988), *aff'd*, 865 F.2d 1228 (11th Cir.1989); *Local Lodge D474*, 673 F.Supp. 199. *But see International Brotherhood of Boilermakers v. Local Lodge 1244*, 128 L.R.R.M. (BNA) 2648 (N.D.Ind.1988) (enforcing trusteeship, but relying on *Local Lodge 714*, 663 F.Supp. 1071, prior to vacation and remand by Seventh Circuit, 845 F.2d 687).

The "Resolution and Petition" at issue, which was signed by 117 members of the 121 person Local Lodge between May 1 and May 4, 1987—several months *prior* to the August 25, 1988 imposition of trusteeship—states, in pertinent part:

> We, the undersigned, all active members in good standing of Local No. D129 ... and employees at the ... LEHIGH PORTLAND CEMENT Company, hereby attest and certify that we vote for and support a total disaffiliation of our Local Union from the [IBB].
>
> We further vote for and certify our approval and authorization that our representation rights, all assets, monies and property of our former Local Union and all other related rights, shall be transferred on our behalf and for our benefit and the benefit of the organization presently being formed as our new International Union which is presently designated as the Independent Workers of North America but whose name may subsequently be altered.
>
> We presently certify that our named officers and representatives are authorized to take all steps and do all acts which are necessary and appropriate to effectuate these purposes. We authorize the expenditure of funds and the transfer of monies and making of deposits and all other acts which will protect our treasuries and assets from interference from the [IBB] or any other organization and which will allow the monies and assets to be used for the benefit of the bargaining unit members and to permit the financing and administration of our designated labor union in its new affiliation.

The plain language of the petition thus explicitly provides for "total disaffiliation ... from the [IBB]" and unequivocally declares the IWNA as the new collective bargaining representative. Moreover, from the purported May 1987 disaffiliation forward, the 117 signators voluntarily paid dues to the newly formed Local 129 of the IWNA, notwithstanding the absence of formal NLRB certification of the IWNA as the employees' bargaining agent. The district court misapplied apposite legal standards in holding that these actions were insufficient to trigger the automatic disbandment provision of Article V, Section 6. On the contrary, these actions, in conjunction, clearly manifested the individual signators' intent to resign voluntarily from IBB membership.

We therefore conclude that Local Lodge D129 had less than the constitutionally mandated ten members at the time that the challenged trusteeship was imposed and, consequently, imposition of the trusteeship was barred by Section 302 of the Landrum–Griffin Act, 29 U.S.C. § 462. Pursuant to Article V, Section 6, of the IBB Constitution, the International is entitled only to those funds and assets of the Local Lodge "at the time of such disband[ment]." Any post-disaffiliation funds should therefore be returned to the reconstituted local in whatever form it now exists.

## CONCLUSION

As the IBB trusteeship was imposed improperly subsequent to the Local Lodge's disbandment, we hold that the district court abused its discretion in granting appellees' motion for a preliminary injunction. The order of the district court enforcing the trusteeship accordingly is reversed. The matter is remanded to the district court with directions to dissolve the trusteeship and to distribute the assets of the

defunct Local Lodge D129, currently held in trust, in accordance with this opinion.